# EXHIBIT A

***The National Consumers League v. Bimbo Bakeries USA***
**D.C. Superior Court Summons, Initial Order,**
**Civil Cover Sheet, and Complaint**

Capitol Corporate Services, Inc.
PO Box 1831
Austin, TX 78767
Phone: (800)345-4647  Fax: (800) 472-0533
rassop@capitolservices.com

## Service Of Process Transmittal Notice

| LINDA SCHEUERER<br>BIMBO BAKERIES USA-LEGAL DEPT.<br>255 BUSINESS CTR DR<br>HORSHAM PENNSYLVANIA 19044 | Date Processed: | 09/27/2013 |
| --- | --- | --- |
| | Completed By: | LOIS RAYNES |
| | Delivery Method to Client: | FEDEX 2 DAY |
| | Tracking Number: | 911724600656 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| Date / Time Received<br>09/27/2013  2:00 PM in PENNSYLVANIA | Transmittal #<br>PA-85991 | Delivered to Agent by<br>PROCESS SERVER |
| --- | --- | --- |

**With Regard to Client**
BIMBO BAKERIES USA, INC.

**Title of Case or Action**
THE NATIONAL CONSUMERS LEAGUE V BIMBO BAKERIES USA

| Case Number<br>2013 CA 6548B | Type of Document Served<br>COMPLAINT/PETITION |
| --- | --- |

**Court Name**
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA CIVIL DIVISION

**Note**

1-85991Q



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THE NATIONAL CONSUMERS LEAGUE
Vs.                                                     C.A. No.        2013 CA 006548 B
BIMBO BAKERIES USA

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JOHN M MOTT
Date: September 26, 2013
Initial Conference: 10:00 am, Friday, January 03, 2014
Location: Courtroom 221
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001                                    Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

The National Consumers League

_____
Plaintiff

13 - 0 0 0 6 5 4 8

vs.

Case Number _____

Bimbo Bakeries USA

_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Tracy D. Rezvani

_____
Name of Plaintiff's Attorney

1050 Connecticut Ave NW 10th Floor
_____
Address
Washington, D.C.

(202) 350-4270
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

# Superior Court of the District of Columbia

### CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

The National Consumers League

vs

Bimbo Bakeries USA

**13 - 0 0 0 6 5 4 8**

Case Number: _____

Date: __9/26/2013__

☐ One of the defendants is being sued
in their official capacity.

---

Name: *(Please Print)*  Tracy D. Rezvani

Firm Name: Rezvani Volin & Rotbert P.C.

Telephone No.:          Six digit Unified Bar No.:
(202) 350-4270 x101      464293

Relationship to Lawsuit

☒ Attorney for Plaintiff

☐ Self (Pro Se)

☐ Other: _____

---

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury
Demand: $__Statutory damages__    Other: __Equitable and injunctive__

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:    *(Check One Box Only)*

**A. CONTRACTS**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 15 Special Education Fees

☐ 07 Personal Property
☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 13 Employment Discrimination

**COLLECTION CASES**

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 18 OVER $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass
☐ 06 Traffic Adjudication

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☒ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☒ 08 Fraud

☐ 09 Harassment
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE ☐  IF USED

CV-496/May 13

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation
  Under $25,000 Pltf.
  Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)

- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award
  (DC Code § 16-4401)

- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation
  Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation
  Over $25,000
- ☐ 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)
- ☐ 26 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____
Attorney's Signature

9/26/2013
_____
Date

CV-496/Aug 12

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THE NATIONAL CONSUMERS )
LEAGUE, 1701 K Street, NW, Suite 1200 )
Washington, DC 20006, on behalf of the )
general public, )
                             )
     Plaintiff, )     Case No.
                             )
     v. )
                             )
Bimbo Bakeries USA )
255 Business Center Drive, Horsham, )     13 - 0006548
PA 19044 )
                             )
     Defendant. )

## COMPLAINT

Plaintiff, the National Consumers League ("Plaintiff"), by and through its counsel, brings

this action against Defendant Bimbo Bakeries USA, ("Defendant") on behalf of the general

public, alleges the following based upon information, belief and the investigation of counsel:

## NATURE OF THE CASE

1.     Plaintiff brings this action on behalf of the general public of the District of

Columbia to redress the pervasive pattern of fraudulent, deceptive, and otherwise improper

marketing practices that Defendant continues to engage in regarding the sale of two items: (1)

Thomas' Light Multi-Grain Hearty English Muffins that exaggerate the presence of grains other

than wheat and imply that the English Muffins are whole grain; and (2) Sara Lee Classic Honey

Wheat bread that implies that the product has a significant amount of whole wheat when there is

minimal whole wheat flour in the product.

1

2.    Defendant sells a variety of baked goods under numerous brand names, including Thomas' and Sara Lee.

3.    Defendant markets the Light Multi-Grain English Muffins as part of Thomas' "Hearty Muffins" line.

4.    Defendant markets the Classic Honey Wheat bread under its Sara Lee brand.

5.    Whole grain content is emphasized on a variety of the products in the Thomas' Hearty Muffins line.[1]

6.    The Thomas' "Hearty Muffins" line purports to include allegedly healthier varieties than the Original line of muffins.

7.    Each of the products in Thomas' "Hearty" line purports to offers healthier benefits due to its grain, fiber, or protein content.[2]

8.    Whole grain claims are made on these Thomas' products and on the product website.

9.    Defendant cultivates this "better for you" impression for its Thomas' Hearty Muffins line through its advertising and the stark contrast it makes between its Original line and Hearty Muffin line.

10.    Defendant implies through this advertisement and "Hearty" moniker that these English muffins are nutritionally superior to other English muffin brands or even superior to Thomas' *other* English muffin lines.

---

[1] http://thomasbreads.com/Our-Products/English-Muffins/Default.aspx

[2] http://thomasbreads.com/Our-Products/English-Muffins/Default.aspx.

2

11.     While Defendant compares the calories between the Thomas' Multi-Grain

English Muffin (regular version) and the Thomas' Light Multi-Grain English Muffin (light

version), it fails to disclose that a key ingredient in the regular version ---whole wheat-- is *absent*

from the light version.[3]

12.     Whole wheat flour is a primary whole grain ingredient in the regular version of

the Multi-Grain English Muffin.[4]

13.     The label for the regular version of Multi-Grain English Muffins prominently

states that they are "made with whole grains" and specifies that they contain 8g of whole grain

per serving.[5]

---

[3] The rear panel of the carton contains a prominent box stating: "DID YOU KNOW these
muffins have:

1/3 Less Calories Than Our Regular Product
8 Grams of Fiber-An Excellent Source
Zero Grams of Trans Fat
No Cholesterol (A Cholesterol –Free Food)
No High Fructose corn Syrup
And Are Low in Fat"

[4] http://thomasbreads.com/our-products/product.aspx?sku=4812127607 (click on Nutrition Facts
and Ingredients): unbleached enriched wheat flour [flour, malted barley flour, reduced iron, niacin,
thiamin mononitrate (vitamin b1), riboflavin (vitamin b2), folic acid], water, whole wheat flour, sugar,
farina, soybean oil, yeast, flaxseed, wheat gluten, preservatives (calcium propionate, sorbic acid ), salt,
rye, corn cereal, dextrose, ground corn, malt, monoglycerides, brown rice, oats, soybeans, triticale, barley,
millet, caramel color, nonfat milk, soy flour, whey.

[5] Ordinarily, the "made with whole grains" moniker is insider code for "transitional" bread and not
"traditional whole wheat bread". In fact, insiders refer to such breads as "*so-called* 'wheat bread' [as those] baked
with little or no whole grains."). Milling & Baking News, Bread Product Perspective, p. 32 (Feb. 21, 2012)
(emphasis added).

3



14.     In contrast, the Light Multi-Grain Hearty English Muffins are deceptively labeled as "multi-grain" and also bear the "Hearty" moniker, even though the predominant ingredient is ordinary refined enriched wheat flour (white flour):[6]

> Unbleached enriched wheat flour [flour, malted barley flour, reduced iron, niacin, thiamin mononitrate (vitamin b1), riboflavin (vitamin b2), folic acid], water, modified food starch, yeast, wheat gluten, fiber (cellulose and/or soy), polydextrose, farina, cornmeal, toasted corn germ, natural flavor, preservatives (calcium propionate, sorbic acid, potassium sorbate), salt, cracked wheat, rye, grain vinegar, whey, datem, leavening (monocalcium phosphate, sodium acid pyrophosphate, baking soda), malt extract, ground corn, soybean oil, dextrose, cellulose gum, brown rice, oats, mono- and diglycerides, xanthan gum, ethoxylated mono- and diglycerides, soybeans, triticale, barley, flaxseed, millet, sucralose, sodium stearoyl lactylate, soy flour, nonfat milk.

15.     Each of the other seven grains identified on the packaging (corn, rye, brown rice, oats, triticale, barley, and millet) is present only in miniscule amounts.

16.     In fact, there is more yeast in the Light Multi-Grain Hearty English Muffins than corn, brown rice, oats, triticale, barley or millet.

---

[6] http://thomasbreads.com/Our-Products/English-Muffins/Hearty-Muffins/Thomas-Light-Multi-Grain-English-Muffins/Default.aspx (click on Nutrition Facts and Ingredients).

4

17.    By contrast, the regular Multi-Grain Hearty English Muffins have more whole wheat than yeast.

18.    To put this in perspective, a typical recipe for a loaf of bread calls for just teaspoons of yeast, compared to cups of flour.

19.    For another comparison, one needs only look to the "Original 'Made with Whole Grains' English Muffins" which is *not* listed as part of the Hearty line, implying that there is more whole grain in the Hearty product line than in the Original line.[7]



20.    Yet the "Original 'Made with Whole Grains' English Muffins" contains whole white wheat in quantities greater than yeast:

> Unbleached enriched wheat flour [flour, malted barley flour, reduced iron, niacin, thiamin mononitrate (vitamin B1), riboflavin (vitamin B2), folic acid], water, *whole white wheat flour*, farina, yeast, sugar, salt, preservatives (calcium propionate, sorbic acid), soybean oil, grain vinegar, mono- and diglycerides, citric acid, whey, soy flour, nonfat milk.

(emphasis added).[8]

[7] http://thomasbreads.com/Our-Products/English-Muffins/Default.aspx

[8] http://thomasbreads.com/Our-Products/English-Muffins/Original/Thomas-Original-made-with-Whole-Grains-English-Muffins/Default.aspx

21.     Whole white wheat is a whole grain.[9]

22.     The name Light Multi-Grain Hearty English Muffins implies that it is a whole grain product.

23.     The packaging for the Light Multi-Grain Hearty English Muffin is similar to the regular version and prominently displays the same multi-grain claim, on the same section of the package.



24.     By placing the Light Multi-Grain Hearty Muffins in the "Hearty Muffins" line, Defendant capitalizes on the confusion caused by the cultivated impression fostered by the "Hearty" line.

25.     By prominently placing "multi-grain" on its packaging, it misrepresents or otherwise implies that it contains multiple grains in substantial quantities.

---

[9] http://wholegrainscouncil.org/whole-grains-101/whole-white-wheat-faq

6

26.     Yet comparing it to the other muffins in the "Hearty" line, or the "Original 'Made with Whole Grains' English Muffins" in the "Original" line, Thomas' Light Multi-Grain Hearty Muffins misrepresents its whole grain content.

27.     Defendant also markets a variety of breads under the Sara Lee name.

28.     On its website, Defendant claims that "Sara Lee® breads contain between five and more than 25 grams of whole grain per serving." [10]

29.     Of the varieties, the Classic Honey Wheat is the only variety called "wheat" which is not 100% whole wheat. [11]

30.     Defendant's website describes Sara Lee Honey Wheat as a whole wheat bread: "It's a wonder what that little drop of pure golden honey does when you add it to our famously textured whole wheat bread."



---

[10] http://www.saraleebread.com/our-nutrition/the-whole-grain-solution

[11] http://www.saraleebread.com/our-bread/bread

31.    In contrast, the website does not list the Sara Lee *Classic* Honey Wheat at all, leaving the consumer without any indication that the small brown "classic" banner means anything significant at all.



32.    In fact, unless consumers have the Classic Honey Wheat in hand *and* the website open, they would not realize that the description for Honey Wheat bread on the website corresponds to another version and not the *Classic* version being held—assuming they would even notice the small "classic" banner.

33.    The most prevalent ingredient in Sara Lee's Classic Honey Wheat bread is refined wheat flour:

> Enriched wheat flour [flour, malted barley flour, reduced iron, niacin, thiamin mononitrate (vitamin B1), riboflavin (Vitamin B2), folid acid], water, yeast, honey, whole wheat flour, wheat gluten, sugar, wheat bran, soybean oil, salt, calcium propionate (preservative), datem, monoglycerides, cellulose gum, calcium sulfate, monocalcium phosphate, cornstarch, soy lecithin [sic], citric acid, grain vinegar, potassium iodate, soy flour.

34.    Again, there is more yeast in the Classic Honey Wheat Bread than whole wheat.

35.    A reasonable consumer would purchase Sara Lee's Classic Honey Wheat bread believing that it contained substantial amounts of whole wheat.

8

36.     Sara Lee Classic Honey Wheat bread is misbranded under Section 403(g) of the Federal Food, Drug and Cosmetic Act because it should be named "enriched bread," the standardized name required by regulation."[12]

37.     Under Federal regulations, the appropriate name for bread that is composed primarily of white flour is "white bread" or "enriched bread" if enriched flour is used and/or required nutrients have been added.[13]

38.     Wheat bread is not an appropriate name for bread that is primarily composed of white flour.[14]

39.     The only time "wheat" is permitted to be used as part of the name of a bread is for "whole wheat bread."[15]

40.     Plaintiff brings claims for violations of the D.C. Consumer Protection Act, D.C. Official Code §§ 28-3901 et seq. Plaintiff seeks restitution, damages, injunctive relief in the form of an order requiring the cessation of the unlawful marketing alleged herein and corrective advertising, and attorneys' fees and costs of this suit.

## JURISDICTION

41.     This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code § 11-921 and §28-3905(k)(1).

---

[12] 21 C.F.R. § 136.115.

[13] 21 C.F.R. § § 136.110, 136.115.

[14] 21 C.F.R. §§ 137.165, 137.105, http://wholegrainscouncil.13org/whole-grain-101/identifying-whole-grain-products ("enriched flour" is "never used to describe whole grain").

[15] 21. C.F.R. § 136.180. The required name for bread made with enriched wheat flour is "enriched bread." 21 C.F.R. § 136.115.

42.     This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-423. This Court has personal jurisdiction over the parties because, *inter alia*, Defendant markets its products in Washington, D.C., is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in Washington, D.C.

43.     Plaintiff is headquartered in Washington, D.C.

44.     A substantial part of the actions which gave rise to Plaintiff's causes of action occurred in this jurisdiction.

## PARTIES

45.     Plaintiff, the National Consumers League, is a 501(c)(3) non-profit organization located at 1701 K Street N.W., Suite 1200, Washington, D.C. 20006.

46.     Plaintiff focuses its advocacy on consumer protection, including efforts to promote accurate labeling on food products.

47.     Defendant Bimbo Bakeries USA ("Bimbo") is the U.S. subsidiary of Mexican parent Grupo Bimbo S.A.B. de C.V. Defendant's principal place of business is located at 255 Business Center Drive, Horhsam, PA 19044. The Sara Lee bread is produced by Bimbo owned entity, Earthgrains Baking Companies, also headquartered in Horhsam PA. The Thomas English muffins are produced by Bimbo owned entity, Orograin Bakeries Products Inc. in Horsham PA.

## THE INTERESTS OF NCL & THE GENERAL PUBLIC

48.     Defendant deceptively marketed its Thomas' Light Multi-Grain Hearty English Muffins and Sara Lee Classic Honey Wheat Breads to District of Columbia residents by

10

fostering the false impression that they contained substantial amounts of a variety of whole grains.

49.     Upon information and belief, Defendant has caused damage and adverse effects to residents of this District.

50.     Plaintiff acts for the benefit of the General Public as a Private Attorney General pursuant to District of Columbia Code §28-3905(k)(1).

51.     The NCL has worked diligently to promote accurate labeling of consumer goods. It has investigated, publicized, and/or litigated on mislabeling for lemon juice, vine-ripened tomatoes, extra-virgin olive oil, sunflower seeds, false health claims on cereal, and adulterated honey. It has also specifically written to the FDA and Martin's Famous Pastry Shoppe, Inc. regarding the mislabeling of Martin's "100% Whole Wheat Potato Bread." Finally, the NCL has met with the FDA to raise its concerns regarding inaccurate, false and deceptive labeling of breads.

## SUBSTANTIVE ALLEGATIONS

*Thomas' Use of the Term Multi-Grain in its Light Multi-Grain Hearty English Muffins Creates a False Impression Regarding the Nature of its Muffins*

52.     The most prevalent ingredient in Thomas' Light Multi-Grain Hearty English Muffins is refined wheat flour.

53.     A reasonable consumer would purchase Light Multi-Grain Hearty English Muffins believing that it contained substantial amounts of a variety of whole grains.

54.     Thomas' deliberately takes advantage of the well-known consumer confusion about whole grain products in choosing the terms "Multi-grain" as part of its product name.

11

55.     Thomas' deliberately places the Light Multi-Grain Hearty English Muffins in its "Hearty" line to capitalize on the line's cultivated reputation for superiority in health and nutrition.

56.     Yet the amount of yeast used in its Light Multi-Grain Hearty English Muffins *exceeds* the amount of whole grain in the product.

57.     Product packaging cannot exaggerate the presence of healthy ingredients simply because the product contains an ingredients list. [16]

58.     The average consumer who reads the ingredient lists does not know that the ingredients are listed in descending order of predominance by weight.

59.     Consumers in the general public of the District of Columbia, relying on Defendant's representations, purchased Light Multi-Grain Hearty English Muffins with the reasonable expectation that the English Muffins contained substantial amounts of whole grains, i.e., at least 51% of the product is whole grain as or contains at least 8 grams of whole grains per ounce.

60.     Consumers paid for a product that they reasonably thought to contain significant amounts of whole grains, as suggested by the product name.

---

[16] *Williams v. Gerber Products, Inc.*, 552 F.3d 934 (9th Cir. 2008).

*Defendant Has Sought to Capitalize on Increasing Consumer Demand for Whole Grains through Its Advertising, Naming, and Labeling Choices for its Thomas' Light Multi-Grain Hearty English Muffins*

61.     The sum of Defendant's advertising and labeling practices amount to a

representation that its Light Multi-Grain Hearty English Muffins is characterized by its lack of

refinement, and is healthier than other varieties of its muffins not in the "Hearty" line.

62.     The Defendant's website evidences Bimbo's intention that consumers rely on

these representations when making purchasing decisions. Defendant states[17] that:

THIS PRODUCT IS:

- 0g Trans Fat
- Cholesterol Free
- Excellent Source of Fiber
- Good Source of Calcium
- Light
- Low Fat
- Multigrain.

63.     Thus, multigrain is promoted as one of the health benefits of the muffins.

64.     Defendant knows, or should know, that the name of its Light Multi-Grain Hearty

English Muffins is deceptive and likely to mislead reasonable consumers.

65.     As a result of Defendant's false, deceptive, and misleading advertising,

consumers did not receive the benefit of their bargains when they purchased their English

muffins.

---

[17] http://thomasbreads.com/Our-Products/English-Muffins/Hearty-Muffins/Thomas-Light-Multi-Grain-English-Muffins/Default.aspx

*Defendant Capitalizes and Relies on Consumer Misconceptions to Mislead Consumers of the Thomas' Light Multi-Grain Hearty English Muffins.*

66.    Research indicates that consumers tend to assume that multi-grain products contain large proportions of whole grain. [18]

67.    The same research indicates that non-wheat grains are as likely to be refined as is wheat; thus multi-grain products are not necessarily whole grain products. [19]

68.    Through words and pictures, Defendant's website clearly differentiates the Hearty line of products as a healthier group of products:



---

[18] http://wholegrainscouncil.org/newsroom/blog/2012/02/abc-news-on-whole-grain-labeling. The article references a national public opinion study conducted for the Center for Science in the Public Interest, and submitted to the Food & Drug Administration on February 2, 2012, which indicates that consumers overestimated the amount of whole wheat or whole grain in a product when shown packages that emphasized the word "wheat" or "multigrain." *See also* Milling & Baking News, Nutrition and Health, p. 48 (Feb. 21, 2012).

[19] *Id.*

14

69.    The ultimate result is a labeling scheme that is deceptively designed to create a false impression.

70.    By engaging in this deceptive scheme, Defendant reaps increased profits by playing on consumers' desires for multi-grain products (i.e. at least 51% of the entire product or at least 8 grams per ounce) of whole grains.

71.    Moreover, Defendant profits from the confusion of consumers who mistakenly believe that their multi-grain claims mean that the muffins contain whole grains.

*Defendant's Use of the Term Wheat in its Sara Lee Classic Honey Wheat Bread Creates a False Impression Regarding the Nature of its Bread*

72.    As mentioned above, the Sara Lee's Classic Honey Wheat bread is predominantly enriched white flour.

73.    Reasonable consumers, relying on Defendant's representations, purchased Sara Lee's Classic Honey Wheat Bread with the reasonable expectation that the bread contained substantial amounts of whole wheat, i.e., at least 51% of the product is whole wheat or at least 8 grams per ounce.

74.    Defendant deliberately takes advantage of the well-known consumer confusion about whole wheat products in choosing the term "wheat" as part of its product name.

75.    But the minimal amount of yeast used in its *Classic* Honey Wheat bread *exceeds* the amount of whole wheat that is used.

76.    Consumers paid for a product that they reasonably thought to contain significant amounts of whole wheat as suggested by the product name.

15

*Defendant Seeks to Capitalize on Increasing Consumer Demand for Whole Wheat through Its Advertising, Naming, and Labeling Choices for its Sara Lee Classic Honey Wheat Bread*

77. The sum of Defendant's advertising and labeling practices amounts to a representation that its *Classic* Honey Wheat bread is characterized by its lack of refinement, and is healthier than other varieties of its breads.

78. Alternatively, Defendant's advertising and labeling practices seek to capitalize on the confusion between its *Classic* Honey Wheat and its Honey Wheat breads.

79. The Defendant's website evidences Bimbo's intention that consumers rely on these representations when making purchasing decisions.

80. Defendant's website describes the Honey Wheat bread shown below as "our famously textured whole wheat bread."



### SARA LEE® HONEY WHEAT BREAD

81. Defendant causes confusion when it does not provide information on its website for the similarly labeled "Sara Lee *Classic* Honey Wheat Bread" that is the subject of this suit.

16



82.     Defendant knows, or should know, that the name of its *Classic* Sara Lee Honey Wheat Bread is deceptive and likely to mislead reasonable consumers into believing it has the same properties and ingredients as its Honey Wheat bread.

83.     As a result of Defendant's false, deceptive, and misleading advertising, consumers did not receive the benefit of their bargains when they purchased their bread.

*Defendant Capitalizes and Relies on Consumer Misconceptions to Mislead Consumers of its Sara Lee Classic Honey Wheat Bread.*

84.     Research indicates that consumers tend to assume that wheat products contain large proportions of whole wheat.[20]

85.     The ultimate result is a labeling scheme that is deceptively designed to create a false impression.

86.     By engaging in this deceptive scheme, Defendant reaps increased sales and profits by playing on consumers' desires for whole wheat products, while not actually providing bread with substantial quantities of whole wheat (i.e. at least 51% of the entire product or contain at least 8 grams per ounce).

---

[20] *See n.* 18, *supra.*

17

87.     Moreover, Defendant profits from the confusion of consumers who mistakenly believe that their Classic Honey Wheat bread contains significant amounts of whole wheat.

88.     Defendant also gains a competitive advantage over other companies in the bread market, like Pepperidge Farm, who advertise their products more accurately.[21]

*Increasing Consumer Demand Has Propelled the Whole Grain and Multigrain Food Market into a Multi-Billion Dollar Industry*

89.     Five year trends beginning in 2005-06 showed a "steep decline in demand for white bread, off 20%...."[22]

90.     The last several years have seen a sustained upward trend in demand for whole grains.[23]

91.     In line with this trend, more new whole grain products enter the market exponentially each year— 10 times as many in 2010 as in 2000.

92.     Fully 11% of all grains consumed in the U.S. are now whole grains. By 2017, the whole grain food market is anticipated to be worth 27.6 billion dollars.[24]

---

[21] The primary ingredient in Pepperidge Farm's Whole Grain Honey Wheat bread is whole wheat flour. There is no white flour in the product.

[22] Milling & Baking News, Bread Product Perspective, *Millers see opportunity for baking despite alarming sales trends*, p. 29-30 (February 21, 2012).

[23] http://wholegrainscouncil.org/newsroom/whole-grain-statistics

[24] http://www.foodnavigator-usa.com/Markets/Whole-grain-food-market-to-hit-27.6-billion-by-2017-with-US-leading-the-way

18

93.    The massive growth in demand for whole grain products stems from their
perceived health benefits—American consumers consider whole grains to be the healthiest
category of food—because of their lack of refinement.[25]

94.    Indeed. up to 49% of mothers seek to purchase less processed foods for their
families, and up to 37% of Americans seek to live a natural lifestyle by purchasing unprocessed
foods.[26]

95.    The industry explicitly discusses the negative opinion of bread after the "Atkins
era" internally and notes that the "key to reversing the tide of public opinion about bread is
clear...The quicker we move to make the fresh bread category all about whole grains, the faster
we will be able to address the negative press we are getting from the critics of bread..." [27]

96.    In other words, the key to increasing sales generally in a culture taught to fear
bread is to promote whole grains—which Bimbo misleadingly does through its Sara lee Classic
Honey Wheat bread and Thomas' Light Multi-Grain English Hearty Muffin.

97.    A survey of grocery shoppers found that whole grains and multigrain were the
two product types experiencing the greatest growth in consumer demand.[28]

---

[25] http://wholegrainscouncil.org/newsroom/whole-grain-statistics

[26] http://events.fleishmanhillard.com/cart-to-kitchen-how-moms-navigate-the-grocery-store/

[27] Milling & Baking News, Bread Product Perspective, *Millers see opportunity for baking despite alarming sales trends*, p. 1, 38 (February 21, 2012).

[28] http://wholegrainscouncil.org/newsroom/whole-grain-statistics

98.     Whole grains are also becoming haute cuisine. Up to 13% of whole grain consumers cite their better taste as the reason, and high-end restaurants increasingly feature whole grains on their menus.[29]

99.     Whole grain breads require more ingredients that need to bind together than is the case with white bread—meaning a more complicated production process.[30]

100.    Since 2005, the Dietary Guidelines for Americans have advised consumers to "make at least half your grains whole" because of the increased health benefits associated with whole grains, including a decreased risk of cardiovascular disease and Type 2 diabetes.[31]

101.    Following the release of the guidelines, supermarket aisles became flooded with products boasting the presence of whole grains, and restaurants and sandwich shops also began featuring whole grain products.

102.    It is very difficult for consumers to determine from a product name or the appearance of a product the extent to which a product contains whole grains.

103.    The US government advises consumers to look for breads that are at least 51% whole grain or at least 8 grams per ounce.[32]

---

[29] http://wholegrainscouncil.org/newsroom/whole-grain-statistics

[30] Milling & Baking News, Bread Product Perspective, p. 32 (February 21, 2012).

[31] *USDA, Dietary Guidelines for Americans 2010*, found at: . http://www.cnpp.usda.gov/publications/dietaryguidelines/2010/policydoc/chapter4.pdf ; http://wholegrainscouncil.org/whole-grain-stamp/stamp-faq-manufacturers The Dietary Guidelines uses the term "ounce equivalent" to reflect the fact that the quantity of particular foods that constitute an ounce of grain varies with the type of food. For example, 1 one-ounce slice of bread is a one ounce equivalent of grain. But ½ cup cooked rice and a 5 inch pancake constitute a one ounce equivalent of grain. Given that each ounce of bread constitutes an ounce equivalent, for ease of discussion, this complaint refers to grams of whole grain per ounce.

20

104.    The average consumer does not know how to read an ingredients list and does not know that for a product to be "whole wheat", the term "whole wheat" needs to appear near the beginning of the ingredient list.

105.    In response to the Dietary Guidelines, American consumers are increasingly choosing to consume more whole grains as part of their diet and lifestyle. [33]

106.    Whole grain consumption is associated with increased cardiovascular health and a decreased risk of type 2 diabetes. [34]

107.    Nutritionists advise adults to eat several servings of whole grain each day. [35]

108.    By contrast, refined grains are widely considered less healthy than whole grains. [36]

109.    Excessive consumption of refined grains is correlated with diabetes and a host of other metabolic disorders. [37]

## CAUSE OF ACTION

### D.C. Consumer Protection Act – D.C. Official Code §§ 28-3901, *et seq.*

110.    Plaintiff incorporates by reference and realleges all previous paragraphs.

---

[32] *Id.*

[33] According to a study released by the Whole Grains Council, whole grain foods now make up 34.7% of grain food products sold in supermarkets. Similarly, 36.7% of top chain restaurants are serving whole grain. Make Half Your Grains Whole Conference Report. NPD Group April 2009; available at http://wholegrainscouncil.org/files/3.AreWeThereYet.pdf.

[34] *See* n. 31, *supra.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

111.    This Count is brought pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.* This Count is alleged against the Defendant on behalf of the General Public of the District of Columbia pursuant to District of Columbia Code § 28-3905(k)(1)(A)-(D).

112.    Defendant is a "person" within the meaning of D.C. Official Code § 28-3901(a)(1), and provide "goods" within the meaning of § 28-3901(a)(7).

113.    Plaintiff is a "non-profit organization" within the meaning of § 28-3901(a)(14) and a "public interest organization" within the meaning of §28-3901(a)(15).

114.    D.C. Code § 28-3904 makes it an "unlawful trade practice … whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things:

(a)    Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b)    Represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e)    Misrepresent as to a material fact which has a tendency to mislead;

(f)    Fail to state a material fact if such failure tends to mislead;

(f-1)    Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; and

(u)     Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

115.    Defendant violated these provisions by, *inter alia*, intentionally representing its Light Multi-Grain Hearty English Muffins as a multi-grain product when it is essentially a white flour muffin with a dusting of other ingredients.

116.    Defendant violated these provisions by the use of innuendo or ambiguity to create a false impression that its Light Multi-Grain Hearty English Muffin contained more whole grains and was otherwise nutritionally superior by placing it in the "Hearty" line instead of the "Original" line as with "Original 'Made with Whole Grains' English Muffins".

117.    Defendant knew or should have known that consumers would consider its largely refined Light Multi-Grain Hearty English Muffin to contain substantial amounts of a variety of whole grains.

118.    Defendant violated these provisions by, *inter alia*, intentionally representing its Sara Lee *Classic* Honey Wheat Bread as containing a significant amount of whole wheat when it is white bread with a minimal amount of whole wheat.

119.    Defendant knew or should have known that consumers would consider its largely refined Sara Lee *Classic* Honey Wheat Bread to contain a substantial amount of whole wheat.

120.    Defendant knew or should have known of the likelihood of confusion between its Sara Lee *Classic* Honey Wheat Bread and its Sara Lee Honey Wheat Bread.

121.    By providing no information on the Sara Lee *Classic* Honey Wheat Bread online, Defendant created an innuendo or ambiguity as to the significance of the brown banner containing the word "*Classic*" on the product's packaging.

122.    Although reliance is not required by the CPPA, District consumers have nevertheless reasonably relied on Defendant's uniform misrepresentations and omissions when purchasing Defendant's sandwiches.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, and in favor of Plaintiff and the District of Columbia General Public, and grant the following relief:

a)  declaring that Defendant's conduct is in violation of the D.C. Consumer Protection Procedures Act;

b)  enjoining Defendant's conduct found to be in violation of the D.C. Consumer Protection Procedures Act and ordering corrective advertising or revised labeling;

c)  granting Plaintiff and the General Public of the District of Columbia restitution, treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater;

d)  granting Plaintiff its costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest; and

e)  granting such other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 26, 2013
Washington, D.C.

**REZVANI VOLIN & ROTBERT P.C.**

By: _____
Tracy D. Rezvani (Bar No. 464293)
1050 Connecticut Avenue, N.W.
Tenth Floor
Washington, D.C. 20036
Phone: (202) 350-4270 x101
Fax: (202) 351-0544
trezvani@rvrlegal.com

*Counsel for Plaintiff the National
Consumers League*