# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NATIONAL CONSUMERS LEAGUE<br><br>Plaintiff,<br><br>v.<br><br>BIMBO BAKERIES USA<br><br>Defendant. | No. 1:13-cv-01674 (RCL)<br>Hon. Royce C. Lamberth |

## MEMORANDUM OPINION

The sole question before this Court is whether it has subject matter jurisdiction over this case, and, if so, whether an award of attorneys' fees to the plaintiff is appropriate. Defendant BBUSA, resisting remand, claims that there is either diversity jurisdiction under 28 U.S.C. § 1332(a) or jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Under § 1332(a), diversity of citizenship is not an issue, as the NCL is an incorporated resident of Washington, D.C., and BBUSA is incorporated in Delaware with its primary place of business in Philadelphia. So the Court is tasked only with deciding whether the amount in controversy exceeds $75,000. Under § 1332(d), the Court must decide whether this case fits the definition of a "class action" or a "mass action."

Finding that the $75,000 amount in controversy is not met, and that this case is neither a "class action" nor a "mass action," this Court lacks subject matter jurisdiction, and thus plaintiff NCL's motion to remand to the D.C. Superior Court will be GRANTED. However, the Court finds that defendant BBUSA had an objectively reasonable basis for removing this case to the district courts, and thus plaintiff NCL's motion for an award of attorneys' fees will be DENIED.

1

## FACTUAL BACKGROUND

Plaintiff, the National Consumers League ("NCL"), represents consumers in actions against businesses it believes are engaged in misconduct. Defendant, Bimbo Bakeries USA ("BBUSA" or "Bimbo") sells well-known brands such as Sara Lee bread and Thomas' English Muffins within the District of Columbia and the rest of the United States. The NCL brought this action on September 26, 2013 in the Superior Court of the District of Columbia on behalf of the general public under District of Columbia Code § 28-3905(k)(1)(A)-(D) against defendant BBUSA. Plaintiff NCL alleges a "pervasive pattern of fraudulent, deceptive, and otherwise improper marketing practices" in regard to BBUSA's wheat-labeled products, and seeks remedies under § 28-3905(k)(2). Pl.'s Mot. Remand 3. On October 28 2013, defendant BBUSA filed a Notice of Removal seeking that the case be tried in the U.S. District Court for D.C. *See* Notice of Removal. On November 28, 2013, plaintiff NCL filed a motion to remand the case. *See* Pl.'s Mot. Remand. Defendant BBUSA resists the remand on the basis that this Court has jurisdiction on either a basis of diversity jurisdiction under 28 U.S.C. § 1332(a) or CAFA jurisdiction under § 1332(d).

## ANALYSIS

### I. STANDARD OF REVIEW

Civil actions filed in state court may be removed to a United States district court by the defendant so long as the case could have originally been filed in federal court. 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* § 1447(c). A challenge to subject matter jurisdiction may be raised on a motion to remand by the parties. *Id.* A "party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in

federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005) (citation omitted); *see also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921).

Courts should apply a strict reading to the removal statute to avoid federalism concerns. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941). Any uncertainty about the existence of subject matter jurisdiction should be resolved in favor of remand. *Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (citing *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)).

## II. TIMELINESS

At the threshold of this case, defendant BBUSA argues that plaintiff NCL has waived its ability to challenge the validity of the Monachelli declaration under the legal standard set forth in *Harmon v. OKI Sys.*, 115 F.3d 477, 478 (7th Cir. 1997). Def.'s Mem. Opp'n 6. *Harmon* distinguishes between a plaintiff alleging a mere "procedural defect" with defendant's notice of removal and a plaintiff alleging a substantive issue with the subject matter jurisdiction of a case. 115 F.3d at 478 (finding that defendant's failure to include amount in controversy in notice of removal was "procedural defect" rather than substantive issue with subject matter jurisdiction, and thus affirming the denial of plaintiff's motion to remand). Subject matter jurisdiction may be challenged at any point, but a motion to remand for a "procedural defect" must be plead within 30 days of the notice of removal. *See* 28 U.S.C. § 1447(c).

First, whether plaintiff NCL waived the ability to challenge the Monachelli declaration is irrelevant because the Court finds the declaration to be valid. *See* III.A.1-2, *infra*. Second, if the Court were to find that diversity jurisdiction was met here, the Monachelli declaration would

play a substantive role in that finding rather than a procedural one. Therefore, the Court finds no issue with the timeliness of plaintiff's challenges.

## III. DIVERSITY JURISDICTION

Federal courts have diversity jurisdiction when (1) there is complete diversity of citizenship (i.e. no plaintiff is a citizen of the same state as any defendant) and (2) the "amount in controversy" exceeds $75,000. 28 U.S.C. § 1332(a). There is no issue as to diversity: plaintiff NCL is a citizen of Washington, D.C., and defendant BBUSA is a citizen of Delaware and Pennsylvania. Notice of Removal ¶¶ 26-28. Thus, the sole issue is the amount in controversy. When calculating the amount in controversy, "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). "[This] doctrine still applies when separate and distinct claims are asserted on behalf of a number of individuals, regardless of whether an action involves a simple joinder of multiple plaintiffs, [or is] a representative action." *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 103-04 (D.D.C. 2008).

The Court discusses a number of issues: (A) the validity of a declaration establishing defendant's sales amounts as well as aggregation of different types of damages, and (B) whether a settlement offer from the plaintiff can establish the amount in controversy. Finding that none of the arguments put forth by defendant BBUSA are sufficient to establish the amount in controversy, this Court does not have diversity jurisdiction under 28 U.S.C. § 1332(a) over this case.

### A. The Monachellii Declaration and Aggregation of Damages

Crucial to defendant's theory that the amount in controversy is greater than $75,000 is the Monachelli declaration, a sworn statement establishing BBUSA's sales information for

"Thomas' Light Multi-Grain Hearty English Muffins" and "Sara Lee Classic Honey Wheat Bread" within the District of Columbia the year prior to the filing of the notice of removal. *See* Def.'s Ex. A. Plaintiff NCL asserts two problems with the declaration itself: (1) it was amended without leave of the Court after the time for amendments of right had passed, and (2) it is speculative. *See* Pl.'s Reply Brief 7-8. Even if the Monachelli declaration is found valid, plaintiff NCL still contends that the declaration does not support removal. *Id.* at 6-7.

### 1. Timeliness of Amendment

The original Monachelli declaration was taken on October 25, 2013, and contained BBUSA's sales data from the beginning of the calendar year through October 6, 2013. Notice of Removal, Ex. B, ECF No. 1-2. The amended, or as defendant BBUSA characterizes it, supplemented, Monachelli declaration was conducted on December 12, 2013, and includes a more specific breakdown of data: September 26, 2012 – September 26, 2013, sales for the year prior to the filing of the complaint, and September 26, 2013 – October 28, 2013, sales between the filing of the complaint and filing of the notice of removal. Def.'s Ex. A. Plaintiff NCL argues that the declaration was not appropriately amended, and thus the more specific data should not be considered. Pl.'s Reply Brief 7. Working from the premise that the December 12, 2013 declaration is excluded, plaintiff NCL contends that under *Mostofi v. Network Capital Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011) the original Monachelli declaration would be invalid because it considers data up until October 6, 2013, wrongfully including 11 days of sales after the complaint. *See* Pl.'s Mot. Remand 8. However, plaintiff misapplies *Mostofi*: "the Court . . . considers the value of the claim *as of the date of removal*." 798 F. Supp. 2d at 55 (emphasis added). Although the complaint was filed on September 26, 2013, the case was

removed on October 28, 2013. Thus, the original Monachelli declaration, covering the year through October 6, 2013, is actually under-inclusive. *See* Def.'s Mem. Opp'n 7-8.

With plaintiff NCL's underlying argument dispensed with, plaintiff has little reason to oppose the inclusion of the December 12, 2013 supplement to the Monachelli declaration. Further, the more specific numbers add dimension and certainty to the parties' arguments, so excluding it on a technical basis may be detrimental to achieving the correct result. Plaintiff NCL was also not denied an opportunity to consider and respond to the new data. *See* Pl.'s Reply Brief. Therefore, the Court sees no issue with accepting the December 12th Monachelli declaration, regardless of whether it is characterized as an amendment or a supplement to the original declaration.

### 2. Speculative Sales Data

Plaintiff NCL next contends that the data contained in the Monachelli declarations, both original and amended, are speculative primarily for the reason that the "sales [data] are not based on BBUSA's own records" but rather on those of a third-party market-research company, Information Resources, Inc. ("IRI"). Pl.'s Mot. Remand 12; *see also* Pl.'s Reply Brief 7-8. Yet plaintiff NCL has presented no evidence that the sworn statement of Mr. Monachelli is untrue, namely that "BBUSA does not track this data itself." Def.'s Ex. A ¶ 5. Nor has plaintiff NCL presented any evidence refuting the actual IRI numbers. In *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 299 (4th Cir. 2008), the plaintiffs "offered nothing" to contradict the accuracy of the defendant's sworn affidavit, which was then used to establish a jurisdictional amount. Here, as in *Strawn*, plaintiff NCL offers only conclusory statements in support of its position that the IRI numbers are speculative. Moreover, it would be erroneous for this Court to find that defendant

BBUSA must present internal numbers that it does not collect. While internal numbers may be more convincing, external data is certainly not barred as a matter of course.

Further, plaintiff suggests that IRI data is inherently speculative. *See* Pl.'s Mot. Remand 11-12; Pl.'s Reply Brief 7-8. The Court does not agree with this position. IRI is a company founded entirely on providing accurate market information and analysis to its clients, including tracking retail information at the store level. *Who We Are*, IRIworldwide.com, http://www.iriworldwide.com/About/WhoWeAre.aspx. Over 95% of the Fortune Global 500 in CPG and retail use IRI's services. *Id.* The Court infers that staying in business and thriving in any competitive marketplace is contingent upon consistently providing a reliable product that meets its customers' needs. Here, the sales data is IRI's product, and neither party presents, nor could this Court locate, any case ruling that third-party research data is inherently speculative or not speculative. Thus, the Court concludes that, at least in this case where sales data was unavailable internally and the plaintiff offered no evidence refuting the numbers, third-party data from a respected company such as IRI is a valid means of determining sales information.

### 3. Amount in Controversy

With the validity of the Monachelli declaration firmly established, the Court now turns to whether it supports removal. The parties agree that the dispute in this case is between only the NCL and BBUSA – that no other plaintiffs have been joined to the case. So the Court's task is to identify what damages plaintiff NCL may recover for itself and whether these meet the amount in controversy. D.C. Code § 28-3905(k), under which this action is brought, establishes a few discreet pools of damages. Relevant to this case are (a) statutory damages of $1,500 per violation, payable to the consumer, (b) attorneys' fees, and (c) an injunction against the unlawful trade practices. § 28-3905(k)(2). Defendant BBUSA essentially argues that because there is

7

only one named plaintiff, NCL, and no scheme in this action for compensating injured consumers, plaintiff NCL would be entitled to *all* potential damages; taken together with the Monachelli declaration citing hundreds of thousands of dollars in business done within D.C. in the past year, the amount in controversy requirement is clearly met. *See* Def.'s Mem. Opp'n 9-10. Defendant BBUSA would also add attorneys' fees and the value of injunctive relief to the overall pool. *Id.* On the other hand, plaintiff NCL contends that most or all of the statutory damages do not apply to it, that attorneys' fees are not appropriate to add when establishing amount in controversy, and that any damages resulting from an injunction have not been pled to any extent beyond speculation. *See* Pl.'s Mot. Remand 7-11. The Court will discuss each potential remedy in turn.

### a. Statutory, actual, and restitutional damages

The crux of defendant BBUSA's argument is that plaintiff NCL, if victorious, may be entitled to recover for *itself* up to $1,500 per violation, pushing the potential amount in controversy into the millions. *See* Def.'s Mem. Opp'n 9-10. Yet this is premised on an incorrect reading of the DCCPPA.[1] Plaintiff NCL is suing "on behalf of the interests of a consumer," § 28-3095(k)(1)(D), and thus statutory damages for such violations are "payable to the consumer," § 28-3905(k)(2)(A). Indeed, "only the damages to which [the plaintiff] would be personally entitled – rather than those on behalf of the public – will count toward satisfying the $75,000 jurisdictional threshold." *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293. 297-98 (D.D.C. 2013). This is a logical application of the non-aggregation principle established in *Snyder v. Harris*, 394 U.S. 332, 335 (1969), which held that aggregation of damage amounts for

---

[1] Defendant's argument would apparently allow for a single individual (or non-profit) to recover ALL the damages associated with a defendant's wrongful actions. This would greatly incentivize litigation and potentially result in huge windfalls to whomever brings a lawsuit the fastest.

jurisdictional purposes may be permitted only "in cases in which a single plaintiff seeks to aggregate two or more *of his own* claims against a single defendant" (emphasis added).

Here, plaintiff NCL does not allege that it has individually been harmed by the defendant's trade practices, and therefore will independently recover no statutory damages. Due to the non-aggregation principle, the thousands of products purchased by D.C. consumers on whose behalf plaintiff seeks to recover may not be considered to establish the amount in controversy, as they are "separate and distinct claims" rather than part of a disgorgement action.[2] *See Nat'l Consumers League v. Flowers Bakeries, LLC*, Civ. A. No. 13-1725, 2014 WL 1372642, at *3 (D.D.C. Apr. 8, 2014); *Zuckman*, 958 F. Supp. 2d at 303-04. The Court unequivocally rejects defendant BBUSA's chief attempt to distinguish this case from the on-point *Flowers* decision. Defendant's argument is that

> NCL has asked in its Complaint that damages be payable to only one entity – NCL. Because of that fact, the rule against aggregation is irrelevant and has no application here. The *Flowers* decision does not address this issue, nor have other courts in this district. Accordingly, diversity jurisdiction exists between NCL and BBUSA.

Def.'s Resp. Supp. Authority 2. A glance at the complaints of these two very similar cases, brought by the same counsel for the same plaintiff, reveals, unsurprisingly, that the prayers for relief are exactly verbatim. *Compare* Complaint at 24, Nat'l Consumers League v. Bimbo Bakeries USA, 1:13-cv-01674 (D.D.C. removed Oct. 28, 2013), ECF No. 1-1 at 31 *with* Complaint at 18, Nat'l Consumers League v. Flowers Bakeries, LLC, 1:13-cv-01725, 2014 WL 1372642 (D.D.C. Apr. 8, 2014), ECF No. 1-1 at 20. There is therefore no reason for these undistinguishable cases to come out differently on the issue of potential statutory damages. This

---

[2] If each of the consumers were named and joined to the suit, they would not be able to aggregate their individually small claims to meet the amount in controversy requirement. It would be promoting gamesmanship to allow for an exception to the rule against aggregation via a representative action.

9

Court agrees with its sister court in *Flowers* and the above cited authorities, and concludes that defendant BBUSA has established no statutory damages in regard to the jurisdictional amount.

### b. Attorneys' fees

Defendant BBUSA next argues that plaintiff's attorneys' fees may be sufficient to establish the amount in controversy because the underlying state statute includes attorneys' fees as a substantive option of recovery. *See, e.g.*, 14AA Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3704.2 nn.28-29 (4th ed. 2011) ("If a state statute allows an award of attorneys' fees . . . , the prospect of those fees being awarded can be factored into the amount in controversy."); *Breakman*, 545 F. Supp. 2d at 107. However, plaintiff NCL points to a body of jurisprudence cited by the *Breakman* court that would reject the usual aggregation of statutory attorneys' fees and include them only on a pro rata basis. *See* 545 F. Supp. 2d at 107 (citing *Kessler v. National Enterprises, Inc.*, 437 F.3d 1076, 1079-80 (8th Cir. 2003); *National Organization for Women v. Mutual of Omaha Insurance Co.*, 612 F. Supp. 100, 108-09 (D.D.C. 1985)). The Court recognizes that the district courts of this circuit have generally adopted the *Breakman* view, *see, e.g.*, *Zuckman*, 958 F. Supp. 2d at 301-02; *Nat'l Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 140-41 (D.D.C. 2010), and so conforms itself to this analysis.

Defendant BBUSA cites the *Zuckman* analysis for establishing appropriate attorneys' fees, Notice of Removal ¶ 32, which analyzes the damages claimed by the representative plaintiff separately from those being recovered on behalf of the general public. 958 F. Supp. 2d at 301 ("[T]he Court may consider only [plaintiff's] share of the total fees when calculating the amount in controversy" in a DCCPA case). Because plaintiff NCL is suing under § 28-3905(k)(1)(D) and is recovering no independent damages, the amount of attorneys' fees applicable to it for

jurisdictional purposes are $0.[3] *See Zuckman*, 958 F. Supp. 2d at 302. Further, it would be troubling "that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends [only] upon a lump sum award of attorneys' fees." *Breakman*, 545 F. Supp. 2d at 107. Even if the Court were not to reduce the attorneys' fees according to the above analysis, defendant BBUSA has not provided even an estimate as to what those fees would be. Defendant's speculation or conclusory statements as to the amount of attorneys' fees is insufficient to establish a jurisdictional amount. *Your Girl Friday, LLC v. MGF Holdings, Inc.*, Civ. A. No. 06-0385, 2006 WL 1028959, at *2 (D.D.C. Apr. 18, 2006). Unlike in *Zuckman* where the plaintiffs represented in an affidavit that they expected to work 1,750 or more hours should their case proceed to trial, here neither party presents evidence of plaintiff NCL's expected hours. 958 F. Supp. 2d at 301. The Court could only speculate as to the eventual cost of this litigation. As such, including attorneys' fees in the jurisdictional calculus here is not appropriate.

### c. Cost of injunction

Finally, defendant BBUSA argues that the cost of the injunction should be added to the amount in controversy calculation. *See* Notice of Removal ¶ 31. Generally, "[t]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (citing *Comm. for GI Rights v. Callaway*, 518 F.2d 466, 472-73 (D.C. Cir. 1975). But "[c]ourts have found that general assertions that the cost of injunctive relief would exceed $75,000 are too

---

[3] The Court realizes that this would mean that every case brought under § 28-3905(k)(1)(D) would fail to satisfy diversity jurisdiction. In light of the fact that *every* case brought under the DCCPPA that has been removed to the district courts has been remanded, the Court sees no problem with articulating a rule that would, in effect, exclude just one category of recovery from diversity jurisdiction eligibility. *See, e.g., Zuckman*, 958 F. Supp. 2d at 306; *Stein v. Am. Express Travel Related Servs.*, 812 F. Supp. 2d 69, 73 (D.D.C. 2011); *Mostofi*, 798 F. Supp. 2d at 52; *General Mills*, 680 F. Supp. 2d at 132; *Breakman*, 545 F. Supp. 2d at 96; *Ctr. for Sci. in the Pub. Interest v. Burger King Corp.*, 534 F. Supp. 2d 141, 144 (D.D.C. 2008); *Reigner v. Ingersoll-Rand Co.*, 461 F. Supp. 2d 1, 2 (D.D.C. 2004).

speculative to establish jurisdiction." *Zuckman*, 958 F. Supp. 2d at 302 (citing *General Mills*, 680 F. Supp. 2d at 140); *see also Wexler*, 496 F. Supp. 2d at 154 (finding defendant's statement that total costs of injunction were "certain" to exceed $75,000 was insufficient to meet defendant's burden).

Here, defendant BBUSA makes no effort to chronicle the costs that it would incur in the event of an injunction, and the Court will not speculate as to what those costs may be. Because defendant BBUSA's statements are insufficient to support including any injunctive costs, there is no need to proceed further.

### B. Plaintiff's Settlement Offer and FRE 408

Defendant BBUSA argues that a settlement offer is sufficient to establish the amount in controversy in a case, Def.'s Mem. Opp'n 11-12, while plaintiff NCL contends that admitting such evidence would violate Rule 408 of the Federal Rules of Evidence, Pl.'s Reply Brief 8-10. Thus, the issue may be framed as whether Rule 408 prohibits the use of a settlement offer as evidence of the amount in controversy. FRE 408 provides in relevant part:

> **(a) Prohibited Uses.** Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim

Fed. R. Evid. 408(a). Although the D.C. Circuit has yet to decide the question,[4] other federal courts of appeals have found that a plaintiff's settlement demand can be used as evidence of the amount in controversy so long as it reflects a "reasonable estimate" of the plaintiff's claim.

---

[4] The plaintiff's citation to *United States v. Davis*, 596 F.3d 852, 859 (D.C. Cir. 2010) is not on point because that case is a criminal case where prior negotiations were being used to prove liability, while this case is a civil case where the settlement offer is being used to decide a jurisdictional issue. *See* Pl.'s Reply Brief 8.

*Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002) (holding that settlement letter valuing trademark at $100,000 "is sufficient [evidence] to establish the amount in controversy"); *accord Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (holding that settlement offer was "used . . . to show the stakes, a question independent of the claim's merit."); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994).

Regardless of this persuasive body of jurisprudence, this Court is advised to avoid predicting how the D.C. Circuit would rule on the question, and so adopts the narrow approach recently followed by *National Consumers League v. Flowers Bakeries, LLC*, Civ. A. No. 13-1725, 2014 WL 1372642, at *4-5 (D.D.C. Apr. 8, 2014). Assuming *arguendo* that the rule allowing the settlement offer to be considered exists, "[a] plaintiff's proposed settlement amount is [only] *relevant evidence* of the amount in controversy." *Id.* at 9-10 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) (emphasis in original) (internal quotation marks omitted)). Here, exactly like in *Flowers*, the settlement offer is insufficient to establish the amount in controversy due to the nature of the NCL's potential recovery as a plaintiff. As discussed above and in *Flowers*, it is the consumers, rather than the NCL, who would be entitled to recover more than $75,000 in this case, and thus a settlement demand of more than $75,000 is not an independently sufficient determination of the amount in controversy.

## IV. THE CLASS ACTION FAIRNESS ACT

Even if there is no diversity jurisdiction, Defendant BBUSA would argue that jurisdiction is appropriate under two provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). First, defendant BBUSA contends that this case is a "class action" where the "amount in controversy exceeds the sum or value of $5,000,000," and there is minimal diversity: "any

member of the class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2)-(A). Second, defendant BBUSA argues that this case is a "mass action" where the "monetary relief claims of 100 or more persons" are being "tried jointly." *Id.* § 1332(d)(11)(B)(i). For the reasons discussed below, the Court finds that this case is neither a class action nor a mass action removable under CAFA.

### A. Class Action Jurisdiction

The district courts of the D.C. Circuit have generally looked to two factors to determine whether a DCCPPA action is a class action: (1) whether the plaintiff attempted to comply with the D.C. Superior Court's Rule 23 for class actions, and (2) whether the plaintiff sought class certification. *See Zuckman*, 958 F. Supp. 2d at 304-05; *Breakman*, 545 F. Supp. 2d at 101-02. Defendant BBUSA attempts to distinguish this case from those requirements by arguing that *Zuckman* and *Breakman* were brought under the individual provisions of the DCCPPA rather than § 28-3905(k)(1)(D), and that actions brought under § 28-3905(k)(1)(D) are class actions essentially by definition. Although this Court agrees with defendant BBUSA that the NCL most likely has standing to bring this action only under § 28-3905(k)(1)(D) because plaintiff NCL does not claim to have purchased any products itself,[5] *National Consumers League v. Flowers Bakeries, LLC*, Civ. A. No. 13-1725, 2014 WL 1372642, at *6 (D.D.C. Apr. 8, 2014) also dealt with this exact characterization issue, concluding that even under § 28-3905(k)(1)(D) "the statute's use of the term 'class' would [not] automatically permit removal under CAFA's class action provisions."

---

[5] In this case, plaintiff NCL could be categorized either as a public interest organization or a non-profit. *See* Def.'s Mem. Opp'n 13. As such, it potentially has standing under either § 28-3905(k)(1)(C) or § 28-3905(k)(1)(D). Under defendant's theory, in order to gain standing under § 28-3905(k)(1)(C), plaintiff would have to purchase some products to "test or evaluate" them, and only then would its suit not be a class action. Requiring plaintiffs to jump through procedural hoops to manufacture a particular type of standing is not sensible. For this reason and the reasons discussed below, the Court construes § 28-3905(k)(1)(D) solely as *enabling* class actions, not requiring them.

Rather, CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."[6] 28 U.S.C. § 1332(d)(1)(B). This frames the question as whether § 28-3905(k)(1)(D) is a "state statute or rule of judicial procedure 'similar' to Rule 23 that authorizes a class action." *Bauman v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014). "A state statute or rule is similar to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials." *Id.* (quoting *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174 (4th Cir. 2011)). The "hallmarks of Rule 23 class actions [are] adequacy of representation, numerosity, commonality, typicality, [and] the requirement of class certification;" absent these, private attorney general actions lack "the equivalency to Rule 23 that CAFA demands." *Id.* at 1123 (quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216-17 (2d Cir. 2013));[7] see also Fed. R. Civ. Pro. 23(a).

Here, defendant BBUSA points out that § 28-3905(k)(1)(D)(ii) specifically requires "public interest organizations" to be adequate, however, other important "hallmarks" are absent. Particularly, there is no procedural element for class certification and no notice provision for would-be class members. D.C. Code § 28-3905(k)(1)(D) certainly gives plaintiffs discretion to file class actions under that provision, but that is not what plaintiff NCL chose to do. Because of the conspicuous lack of class certification requirements in the statute, the precedent holding that

---

[6] Defendant BBUSA places emphasis on the word "authorizing." Def.'s Resp. to Second Notice Supp. Authority 3. However, as interpreted in *Bauman v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121-23 (9th Cir. 2014) and cases cited therein, the proper analysis requires a further comparison between the state statute and rule 23 of the Federal Rules of Civil Procedure. A state statute expressly authorizing a class action is not by itself sufficient to establish CAFA jurisdiction. *See West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174-75 (4th Cir. 2011).

[7] *Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013) involved a public attorney general action. However, private and public attorney general actions have long been analogized, and where "an identical suit brought by the state . . . itself would plainly not qualify as a CAFA class action, no different result should obtain when a private attorney general is the nominal plaintiff." *Bauman v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014).

private attorney general actions are not class actions, and the public policy reasons discussed in footnote 5, *supra*, the Court concludes that this case is not removable as a class action under CAFA.

### B. Mass Action Jurisdiction

Defendant BBUSA also argues that this case is a mass action under 28 U.S.C. § 1332(d)(11). Mass action cases require: (1) "monetary relief claims of 100 or more persons" that (2) "are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," and that (3) each plaintiff independently satisfies "the jurisdictional amount requirements under subsection (a)." *Id.* § 1332(d)(11)(B)(i). The Supreme Court has interpreted the term "plaintiffs" in CAFA's mass action provision to apply only "to the actual *named* parties who bring an action." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 744 (2014) (emphasis added). This leads to a rather easy result: because plaintiff NCL is the only named plaintiff – no other party has been identified or joined – CAFA's mass action provision does not grant jurisdiction to this Court.

### V. PLAINTIFF'S ATTORNEYS' FEES

The final issue concerns plaintiff NCL's request for attorneys' fees. *See* Pl.'s Reply Brief 14-15. "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28. U.S.C. § 1447(c). The Supreme Court has outlined the standard for awarding attorneys' fees under § 1447:

> the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. (citation omitted). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case . . . . When a court exercises its discretion in this manner,

however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). As such, the key to the inquiry here is whether the removal was "objectively reasonable." *Id.*

Defendant BBUSA put forth several theories in support of its argument for removal. While the Court does not find in defendant BBUSA's favor, at the time the arguments were submitted, there remained an objectively reasonable basis for removal. Particularly, defendant is correct when it asserts that no DCCPPA cases had been brought under § 28-3905(k)(1)(D). Although defendant's arguments were ultimately not successful, both its arguments for diversity jurisdiction under 28 U.S.C. § 1332(a) and CAFA jurisdiction under § 1332(d) were potentially distinguishable on the § 28-3905(k)(1)(D) basis. The Court addressed these arguments head-on, and was notably guided by the post-filing decisions of *Hood*, *Bauman*, and *Flowers*. 134 S. Ct. at 744; 747 F.3d at 1121-23; 2014 WL 1372642 (D.D.C. Apr. 8, 2014). Therefore, the Court concludes that an award of attorneys' fees is not appropriate for this action.

## VI. CONCLUSION

For the aforementioned reasons, the Plaintiff's Motion to Remand this case to the Superior Court of the District of Columbia will be GRANTED, and the Plaintiff's Request for Attorneys' Fees and Costs will be DENIED. The case will be REMANDED to the Superior Court of the District of Columbia. A separate order will be issued alongside this opinion reflecting the relief discussed herein.

Date: 6/4/14    Signature: *Royce C. Lamberth*

The Honorable Royce C. Lamberth
U.S. District Court Judge